1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BORIS C. MURPHY, | Case No. 1:22-cv-00124-EPG-HC |
| Petitioner, | FINDINGS AND RECOMMENDATION TO DENY RESPONDENT'S MOTION TO DISMISS AND DENY PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| B.M. TATE, | (ECF No. 8) |
| Respondent. | ORDER DIRECTING CLERK OF COURT TO ASSIGN DISTRICT JUDGE |

Petitioner Boris C. Murphy is a federal prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging a prison disciplinary proceeding on due process grounds. For the reasons discussed herein, the undersigned recommends denial of Respondent's motion to dismiss and denial of the petition for writ of habeas corpus.

## I.

## BACKGROUND

Petitioner currently is in the custody of the Federal Bureau of Prisons ("BOP") at the United States Penitentiary in Atwater, California ("USP Atwater"). (ECF No. 1 at 1.) The underlying incident and disciplinary proceeding, however, occurred while Petitioner was housed at the Federal Correctional Institution McDowell ("FCI McDowell"). (ECF No. 1 at 1;[1] App. 27.[2])

---

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.
[2] "App." refers to the Appendix filed by Respondent. (ECF No. 8-1.) Appendix page numbers refer to the page numbers stamped at the bottom right corner.

The reporting officer described the incident as follows: At approximately 7:30 p.m. on December 23, 2019, Correctional Officer Z. Dixon was conducting a random search of the cell Petitioner shared with another inmate. Dixon discovered a homemade weapon hidden in the vent above the sink. The weapon was approximately six inches long, made of metal, and sharpened at the end. (ECF No. 1 at 25; App. 27.)

That same day, an incident report was issued, charging Petitioner with possession of a weapon. (ECF No. 1 at 25; App. 27.) Lieutenant Antoszewski investigated the charge and found the "report to be accurate and the charge to be valid." (ECF No. 1 at 26; App. 28.) The incident report was then referred to the Unit Disciplinary Committee ("UDC"). (Id.) On December 31, 2019, the UDC held a hearing and referred the matter to the disciplinary hearing officer ("DHO") due to the severity of the report. (ECF No. 1 at 25; App. 27.)

On January 13, 2020, the DHO conducted a hearing and found that the act was committed as charged. (ECF No. 1 at 28; App. 29.) Petitioner was assessed a sanction of forty-one days of disallowed good conduct time, fourteen days of disciplinary segregation, and four months' loss of commissary. (ECF No. 1 at 29; App. 30.) On April 20, 2020, Petitioner submitted a Regional Administrative Remedy Appeal. (ECF No. 1 at 30; App. 13, 24.) On June 23, 2020, the Regional Director denied the appeal. (ECF No. 1 at 32; App. 23.) On August 4, 2020, Petitioner submitted an appeal to the Office of General Counsel ("Central Office"). (ECF No. 1 at 9–10.) On September 18, 2020, the Central Office rejected Petitioner's appeal because Petitioner submitted more than one letter-size continuation page. The rejection notice stated, "You may resubmit your appeal in proper form within 15 days of the date of this rejection notice." (ECF No. 1 at 44; App. 20.) The Central Office rejected Petitioner's second and third appeals as untimely. (ECF No. 1 at 47, 51; App. 17.)

In his petition for writ of habeas corpus, Petitioner asserts that he was not given written notice of the charges at least twenty-four hours before his disciplinary hearing. (ECF No. 1 at 14.) Petitioner also alleges that various errors in the incident report deprived him of a fair hearing. (Id. at 15.) In response, Respondent filed a motion to dismiss the petition for nonexhaustion. (ECF No. 8.) Respondent also argues that the petition should be denied on the

1   merits because "Petitioner—against a plenary evidentiary record—merely claims the

2   documentary record is wrong" based on "his unsubstantiated recollection" that he was not given

3   a copy of the incident report. (ECF No. 8 at 6.)  Petitioner filed an opposition. (ECF No. 12.)

**II.**

**DISCUSSION**

**A.  Exhaustion**

Respondent argues that dismissal of the petition is warranted because Petitioner failed to complete his administrative appeal to the BOP's General Counsel. (ECF No. 8 at 1.) Petitioner contends that his failure to exhaust should be excused because he did not receive the Central Office's rejection notice to correct his error within fifteen days until nine months after the notice was issued. (ECF No. 12 at 4.)

"As a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) (citations omitted). However, because it is not a jurisdictional prerequisite, exhaustion can be waived if pursuing administrative remedies would be futile. Id. (citations omitted).

The BOP grievance process is set forth at 28 C.F.R. § 542.13–.15, which provide for a two-level review process for appeals of DHO disciplinary proceedings. An inmate challenging an adverse DHO determination submits an appeal directly to the Regional Director using a BP–10 form. 28 C.F.R. §§ 542.14(d)(2), 542.15(a). "The inmate may appeal an adverse decision by the Regional Director to the Central Office (also called the General Counsel) of the BOP using a BP–11 form. The BP–11 must be submitted to the Central Office within 30 calendar days from the date of the Regional Director's decision." Nunez v. Duncan, 591 F.3d 1217, 1219–20 (9th Cir. 2010) (citing 28 C.F.R. § 542.15(a)). An extension of time is available "[w]hen the inmate demonstrates a valid reason for delay . . . includ[ing] those situations described in § 542.14(b)," such as "an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal[.]" 28 C.F.R. §§ 542.15(a), 542.14(b). "Appeal to the General Counsel is the final administrative appeal." 28 C.F.R. § 542.15(a).

On April 20, 2020, Petitioner submitted a Regional Administrative Remedy Appeal (BP–10 form). (ECF No. 1 at 30; App. 13, 24.) On June 23, 2020, the Regional Director denied the appeal. (ECF No. 1 at 32; App. 23.) On August 4, 2020, Petitioner submitted an appeal to the Central Office (BP–11 form). (ECF No. 1 at 9–10.) On September 18, 2020, the Central Office rejected Petitioner's appeal because Petitioner submitted more than one letter-size continuation page. The rejection notice stated, "You may resubmit your appeal in proper form within 15 days of the date of this rejection notice." (ECF No. 1 at 44; App. 20.)

According to Petitioner, on or around September 15, 2020, he was transferred from FCI McDowell to USP McCreary. On October 5, 2020, Petitioner was transferred to an Oklahoma transit center. Petitioner declares he attempted to place a call to the Central Office regarding his appeal, but the call was not accepted. Petitioner then wrote a letter to the Central Office regarding his transfer. On November 12, 2020, Petitioner arrived at USP Atwater and was placed into quarantine for twenty-one days. During the quarantine, Petitioner wrote a second letter to the Central Office regarding the status of his appeal. (ECF No. 1 at 10.) When he was released from quarantine, Petitioner made various attempts to ascertain the status of his appeal with the Central Office via communication with his case manager and the case manager coordinator in addition to sending additional letters to the Central Office. (Id. at 10–12.)

According to Petitioner, on June 22, 2021, he was called into his counselor's office and handed a "full packaged appeal" and the September 18, 2020 rejection notice was attached to the front of this package. (ECF No. 1 at 12.) Petitioner immediately spoke with Unit Manager Lazariuk about verifying Petitioner's receipt of the rejection notice on June 22, 2021. On June 29, 2021, Petitioner wrote a letter of explanation to the Central Office and resubmitted his appeal with a copy of the September 18, 2020 rejection notice with a handwritten notation by Unit Manager Lazariuk indicating that the rejection notice was received at Atwater on June 22, 2021. (ECF No. 1 at 12, 42–45.) On July 22, 2021, the Central Office rejected Petitioner's appeal as untimely because it was received 297 days after the September 18, 2020 rejection. The July 22, 2021 rejection notice informed Petitioner to "submit staff memo on BOP letterhead stating reason untimely filing wasn't your fault." (App. 17 (capitalization omitted).)

1    Petitioner was given a memorandum on BOP letterhead, dated September 1, 2021, from

2    USP Atwater Unit Manager D. Lazariuk that stated: "Inmate Murphy was given the response

3    from the Central Office to his Administrative Remedy on June 22, 2021." (ECF No. 1 at 48.) An

4    appeal was received by the Central Office on September 13, 2021.[3] (App. 2, 15; ECF No. 1 at

5    49.) On September 20, 2021, the Central Office rejected this appeal as untimely, with notations

6    that Petitioner arrived at Atwater on November 12, 2020, and that Petitioner should "submit staff

7    memo on BOP letterhead stating reason untimely filing wasn't your fault." (ECF No. 1 at 51

8    (capitalization omitted).)

9    Generally, dismissal for failure to exhaust administrative remedies is appropriate where a

10   petitioner "attempted to appeal the BOP's decisions, [and] the record shows that the BOP

11   rejected his appeals because they did not meet BOP requirements." Reynolds v. McGrew, 594 F.

12   App'x 377, 378 (9th Cir. 2015). Here, Petitioner's multiple appeals to the Central Office were

13   rejected for failure to meet BOP requirements. However, based on Petitioner's declaration and

14   the September 1, 2021 memorandum from USP Atwater Unit Manager D. Lazariuk, it appears

15   that Petitioner had not received the Central Office's September 18, 2020 rejection that allowed

16   Petitioner to reapply within fifteen days of the rejection notice until June 22, 2021, well after the

17   Central Office's deadline for reapplication. The Court assumes, without deciding, that

18   Petitioner's failure to properly exhaust administrative remedies can be excused and will address

19   the merits of Petitioner's claims.

20   **B.  Review of Claims**

21   In the petition, Petitioner asserts that he was not given advanced written notice of the

22   charges twenty-four hours before his disciplinary hearing, in violation of due process. (ECF No.

23   1 at 14.) Petitioner also contends that various errors in the incident report deprived him of a fair

24   hearing. (Id. at 15.)

25   ///

26   ///

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

28   [3] It is unclear from the record before this Court if Petitioner included the September 1, 2021 memorandum from USP Atwater Unit Manager D. Lazariuk to this appeal.

1    1.   Due Process Requirements of Prison Disciplinary Proceedings

2    Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be

3    diminished by the needs and objectives of the institutional environment. Wolff v. McDonnell,

4    418 U.S. 539, 555 (1974). Prison disciplinary proceedings are not part of a criminal prosecution,

5    so a prisoner is not afforded the full panoply of rights in such proceedings. Id. at 556. When a

6    prison disciplinary proceeding may result in the loss of good time credits, due process requires

7    that the prisoner receive: (1) advance written notice of the charges at least twenty-four hours

8    before a disciplinary hearing; (2) an opportunity, when consistent with institutional safety and

9    correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a

10   written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary

11   action. Superintendent v. Hill, 472 U.S. 445, 454 (1984); Wolff, 418 U.S. at 563–67. Inmates are

12   entitled to an impartial decisionmaker in a disciplinary proceeding. Wolff, 418 U.S. at 570–71.

13   In addition to various procedural requirements for disciplinary proceedings as set forth in

14   Wolff, due process requires that there be "some evidence" to support the disciplinary decision to

15   revoke good time credits. Hill, 472 U.S. at 454–55. "Ascertaining whether this standard is

16   satisfied does not require examination of the entire record, independent assessment of the

17   credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether

18   there is any evidence in the record that could support the conclusion . . . ." Id. at 455–56.

19   2.   Advanced Written Notice

20   The incident report states that the report was delivered to Petitioner on December 23,

21   2019, at 8:45. (ECF No. 1 at 25; App. 27.) The UDC action on the incident report reflects that

22   Petitioner informed the committee, "I never got served the shot.[4] UNTIL TODAY." (Id.)

23   Petitioner contends that "UNTIL TODAY" was improperly added and gave the false impression

24   that Petitioner was given a copy of the incident report at the UDC hearing. (ECF No. 1 at 9, 15.)

25   The DHO report states that at the disciplinary hearing, the "DHO first confirmed that Inmate

26   MURPHY had received a copy of the incident report[.]" (ECF No. 1 at 27; App. 29.) However,

27

28   _____
[4] The "shot" refers to the incident report. (ECF No. 1 at 20.)

1   Petitioner declares that he "made known to the DHO that he never received a copy of his

2   incident report." (ECF No. 1 at 7.)

3       Here, Petitioner asserts that he did not receive advanced written notice of the charge at

4   least twenty-four hours before his disciplinary hearing because he did not receive a copy of the

5   incident report until July 18, 2020, six months after the disciplinary hearing. (ECF No. 1 at 9,

6   14.) Respondent argues that "the DHO report, UDC record, and issuing Incident Report officer,

7   *i.e.* different personnel, document (via contemporaneously noted separate action and

8   observation) that the Incident Report, No. 3343830, was served on Petitioner prior to the DHO

9   hearing." (ECF No. 8 at 6.)

10      The record before this Court includes a "Notice of Discipline Hearing Before the

11  (DHO)," dated December 31, 2019. (App. 44.) The notice is addressed to "Murphy, Boris"

12  "REG. NO.: 17206-056." (Id.) It states the alleged violation as Code 104 "Possessing A

13  Dangerous Weapon" and the date of offense as December 23, 2019. (Id.) It states that Petitioner

14  is "being referred to the DHO for the above charge(s)" and that a hearing will be held at a time,

15  date, and location "TBD." (Id.) Check marks on the notice indicate Petitioner does not wish to

16  have a staff representative and does not wish to have witnesses. The notice was signed by

17  Petitioner and a staff member on December 31, 2019, thirteen days before the disciplinary

18  hearing was held on January 13, 2020. (Id.) Petitioner alleges that at the disciplinary hearing he

19  informed the DHO that he did not receive the incident report and "asked the DHO wasn't this a

20  technicality and that the charges should be dismissed." (ECF No. 1 at 14–15.) Petitioner declares

21  that at the disciplinary hearing, he informed the DHO that "his cellmate (L. Mason) was taking

22  full ownership of the weapon charge." (ECF No. 1 at 7.)

23      In Wolff, the Supreme Court held "that written notice of the charges must be given to the

24  disciplinary-action defendant in order to inform him of the charges and to enable him to marshal

25  the facts and prepare a defense." 418 U.S. at 564. Even if the Court disregards the incident

26  report, UDC record, and the DHO report, and assumes that Petitioner did not receive a copy of

27  the incident report before the disciplinary hearing, the record shows that Petitioner received a

28  written Notice of Discipline Hearing Before the (DHO) on December 31, 2019, thirteen days

before the disciplinary hearing was held on January 13, 2020. This notice was signed by Petitioner and disclosed that Petitioner was being charged with a Code 104 violation, possessing a dangerous weapon, and that the offense occurred on December 23, 2019. (App. 44.) Based on Petitioner's own allegations in the petition (*i.e.*, informing the DHO that his cellmate "was taking full ownership of the weapon charge" (ECF No. 1 at 7)), it is clear that Petitioner knew the disciplinary hearing concerned a weapon violation involving Petitioner and his cellmate. Petitioner does not contend that he was unaware of the nature of the charge against him, and Petitioner does not argue, and the record does not reflect, that he needed the incident report to inform him of the charge and to enable him to prepare a defense.

Not receiving a copy of the incident report before the disciplinary hearing does not necessarily equate to not receiving advanced written notice of the charges. Here, the record establishes Petitioner received a written Notice of Discipline Hearing Before the (DHO) thirteen days before the disciplinary hearing, which was signed by Petitioner and disclosed that Petitioner was being charged with a Code 104 violation, possessing a dangerous weapon, and that the offense occurred on December 23, 2019. (App. 44.) The record also shows that Petitioner was aware of the factual basis of the charge such that he could inform the DHO that his cellmate was taking full responsibility for the weapon violation. Additionally, Petitioner has not articulated any prejudice or harm—such as an inability to marshal facts and prepare his defense—that resulted from not receiving a copy of the incident report before the disciplinary hearing. See Graves v. Knowles, 231 F. App'x 670, 672–73 (9th Cir. 2007) (applying harmless error review to due process claims in prison disciplinary context); Lennear v. Wilson, 937 F.3d 257, 276 (4th Cir. 2019) (noting that "procedural errors in disciplinary proceedings are subject to harmless error review"); Brennan v. United States, 646 F. App'x 662, 666 (10th Cir. 2016) (holding that "*Wolff*'s 24–hour notice requirement for the advance written notice is subject to harmless error review"); Piggie v. Cotton, 342 F.3d 660, 666 (7th Cir. 2003) (per curiam) (applying harmless error analysis to due process claim in prison disciplinary context); Powell v. Coughlin, 953 F.2d 744, 750 (2d Cir. 1991) (stating "it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate

1  assessment as to whether the error was harmless or prejudicial"). Accordingly, Petitioner is not

2  entitled to habeas relief on this ground.

3        3.   Errors in Incident Report

4        Petitioner also asserts that various errors in the incident report deprived him of a fair

5  hearing. (ECF No. 1 at 15.) Petitioner directs the Court's attention to the "Part III –

6  Investigation" portion of the incident report. Petitioner contends that errors regarding the

7  "dates/time/names and a third party inmate register number" violated his right to a fair hearing.

8  (Id.) Section 24 of the Part III – Investigation portion of the incident report states:

9
10
11
> Inmate McVey Reg. No. 10412-087 was read his rights and the body of the incident report. Inmate Murphy stated "yes" when he was Asked if he understood his rights. Murphy, stated, "No Commit." Murphy attitude was calm. Inmate stated that didn't know it was in the cell. It's not mine

12  (App. 40 (errors in original).) In his administrative appeal to the Central Office, Petitioner further

13  elaborated on the claim he presently raises and argued that the dates and times in the incident

14  report were not accurate. Petitioner noted that the incident report states that the incident, as

15  reported by Officer Dixon, occurred at 7:30 p.m. on December 23, 2019, that the investigation of

16  the incident by Lieutenant Antoszewski also occurred at 7:30 p.m. and was completed by 7:30

17  p.m., and that the incident report was completed by Officer Dixon ten minutes later at 7:40 p.m.

18  Petitioner argued that "this clearly shows that the DHO knew the surrounding framework wasn't

19  accurate and full of flaws that affected [Petitioner's] rights to a fair hearing." (ECF No. 1 at 22.)

20        The incident report's reference to "Inmate McVey Reg. No. 10412-087" clearly appears

21  to be a clerical error. Additionally, Petitioner has not articulated any prejudice or harm that

22  resulted from any alleged inaccuracies in the times stated in the incident report other than

23  asserting in a conclusory manner that the errors deprived him of a fair hearing. See Graves, 231

24  F. App'x at 672–73; Lennear, 937 F.3d at 276. Accordingly, Petitioner is not entitled to habeas

25  relief on this ground.

26  ///

27  ///

28  ///

**III.**

**RECOMMENDATION & ORDER**

Based on the foregoing, the undersigned HEREBY RECOMMENDS that Respondent's motion to dismiss (ECF No. 11) be DENIED and the petition for writ of habeas corpus be DENIED.

Further, the Clerk of Court is DIRECTED to randomly ASSIGN a District Court Judge to the present matter.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __November 14, 2022__                    ___/s/ Erica P. Grosjean___
                                                  UNITED STATES MAGISTRATE JUDGE